UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

JONATHAN YARUS AND MOHAMED ALI,

on behalf of themselves and all other employees similarly
situated,

                                    **10 CV 2662**

                                    Plaintiffs,

               -against-

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION, ETC.,

                                  Defendants.

------------------------------------------------------------------------ x

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT OR, IN THE
ALTERNATIVE, FOR SUMMARY
JUDGMENT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS .................................................................................. 2

The Amended Complaint ........................................................................2

The Named Plaintiffs Serve In Positions HHC Has
Designated As FLSA-Exempt ................................................................3

FLSA Disputes Are Subject to the CBA Dispute
Resolution Procedures ..........................................................................3

POINT I

THE NAMED PLAINTIFFS LACK STANDING
WITH RESPECT TO THE CLAIMS ASSERTED
IN THE AMENDED COMPLAINT. ....................................................... 5

POINT II

THE CLEAR, UNMISTAKABLE, AND
MANDATORY DISPUTE RESOLUTION
PROCEDURE CONTAINED IN THE CBA
REQUIRES DISMISSAL OF PLAINTIFFS' FLSA
CLAIMS AS A MATTER OF LAW........................................................ 7

A.    Federal Law Strongly Favors The
Arbitration Of Disputes.................................................................7

B.    The Pyett Decision And Its Progeny Require
Dismissal of Plaintiffs' FLSA Claims In
Favor of Contractual Dispute Resolution .......................................8

A.    The Pyett Decision And Its Progeny Require
Dismissal of Plaintiffs' Claims In Favor of
Contractual Dispute Resolution. ...................................................10

B.    The FLSA Does Not Preclude the
Resolution of Individual Claims Via the
Dispute Procedure in Plaintiffs' CBA............................................12

**Page**

POINT III

    EVEN IF THE NAMED PLAINTIFFS HAVE STANDING TO PURSUE THE RICO CLAIMS ASSERTED IN THE AMENDED COMPLAINT, THE ALLEGATIONS OF THE AMENDED COMPLAINT FAIL TO STATE A CAUSE OF ACTION UNDER THAT STATUTORY PROVISION ........................................................................... 13

    A.    Plaintiffs' Allegation that Defendants Misrepresented the Law Does Not Constitute Actionable Fraud ..........................................16

    B.    Plaintiffs Allegations Regarding the Mailing of Employee Paychecks Are Not Sufficient To Sustain Their RICO Claim .......................................18

    C.    Plaintiffs Fail to State a Claim Under § 1962(c) ...........................................................19

    D.    The FLSA Precludes Plaintiffs' RICO Claim................................21

POINT IV

    LABOR LAW §§ 190(8) AND 191 ET SEQ., DO NOT APPLY TO HHC, A PUBLIC BENEFIT CORPORATION ................................................................... 22

POINT V

    PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED FOR FAILURE TO FILE A NOTICE OF CLAIM................................................................... 23

CONCLUSION........................................................................... 25

**Preliminary Statement**

The Amended Complaint asserts eleven causes of action, including federal claims brought pursuant to RICO and the Fair Labor Standards Act (" FLSA").   The Amended Complaint also asserts claims under the  New York Labor Law and common law tort claims. All of plaintiffs federal and state law claims  arise out of the allegation that defendants failed to "pay[] nonexempt employees for all hour worked and/or overtime for hour worked over forty per week." Amended Complaint ("Amd. Cmplt.") at ¶ 11.  The named Plaintiffs seek to maintain a class action with respect to their causes of action asserted under RICO and New York State Law consisting of "current and former employees who worked for defendants, **were paid hourly** and were not paid  for all  the  time  they  worked  including  applicable  premium  pay." Amended Complaint  Amd. Cmplt. at ¶ 10.  With respect to their FLSA claim, the Amended Complaint avers that "Plaintiffs and Class Members were not classified as exempt employees because hourly employees do not fall under one of the enumerated exemptions under the FLSA."  Amd. Cmplt. at ¶12.

All of the plaintiffs' claims are predicated on their allegation that the New York City Health and Hospitals Corporation ("HHC") failed to pay hourly employees for all compensable time worked.  Specifically, Plaintiffs claim that defendants automatically deduct time from hourly employees paychecks for meals and breaks but fail to ensure that plaintiffs "perform no work during the breaks." Thus, plaintiffs' claim that "hourly employees working at New York City Health and Hospitals Corporation's facilities" "are not fully compensated for work they perform during breaks."  Amd. Cmplt. at ¶ 73.  Defendants now move to dismiss the Amended Complaint.

As a threshold matter, defendants have shown that the named plaintiffs Jonathan Yarus and Mohamed Ali were not hourly employees of HHC. Rather, plaintiffs Yarus and Ali were

employed in positions that HHC designated FLSA-exempt pursuant to the learned professional exemption. See, 29 C.F.R. 541.301. Specifically, plaintiff Yarus was employed in FLSA-exempt full-time salaried position of staff nurse. Plaintiff Ali was employed in the FLSA-exempt full-time salaried position of respiratory therapist. As such, because the named plaintiffs are not hourly employees they lack standing to pursue any and all claims in this action on their own behalves as well as on behalf of all hourly employees.

Even if this Court finds that the named plaintiffs have standing to pursue the causes of action asserted in the Amended Complaint, plaintiffs' FLSA claims must still be dismissed because they are subject to a mandatory dispute resolution provision contained in a Collective Bargaining Agreement ("CBA") covering their respective titles. Specifically, Section 10 of Article XV of the CBA applicable to, among other titles, staff nurses and respiratory therapists, entitled "FLSA Dispute Procedure," requires that "any dispute, controversy or claim concerning or arising out of the application or interpretation of the [FLSA] *shall* be submitted by a claimant [to the FLSA dispute resolution panel]." (emphasis added). Pursuant to 14 Penn Plaza LLC v. Pyett, 129 S. Ct. 1456, 173 L. Ed. 2d 398 (2009) and its progeny, the CBA's dispute resolution procedure is the proper forum for Plaintiffs' FLSA claims.

Lastly, plaintiffs RICO claims fail to state a viable claim for relief because, among other grounds, it fails to meet the heightened pleading requirement that applies to RICO claims predicated on mail fraud. Accordingly, for the reasons set forth herein, the Amended Complaint must be dismissed.

## STATEMENT OF FACTS

### The Amended Complaint

The named plaintiffs, Jonathan Yarus and Mohamed Ali, as described as "employees." Amd. Cmplt. at ¶ 52. The amended complaint describes the class that the named plaintiffs seek

to represent as consisting of "current and former employees who worked for defendants, were paid hourly and were not paid for all the time they worked including applicable premium pay." Amd. Cmplt. at ¶ 10. The amended complaint avers that the "claims of Plaintiffs and Class Members are based on whether defendants' practice of not paying **nonexempt** employees for all hours worked and/or overtime for hours worked over forty per week violated the law. Amd. Cmplt. at ¶ 11 (emphasis added). Plaintiffs claim that they were not "classified as exempt employees because hourly employees do not fall under one of the enumerated exemptions under the FLSA." Amd. Cmplt. at ¶ 122. The named plaintiffs allege that they are "similarly situated to the Class Members." Amd. Cmplt. at ¶ 11.

**The Named Plaintiffs Serve In Positions HHC Has Designated As FLSA-Exempt**

Named plaintiff Jonathan Yarus was employed in the full-time salaried position of staff nurse. HHC has designated the full time staff nurse position as FLSA-exempt. See Declaration of Mondo Hall[1] ("Hall Dec.") dated September 17, 2010 at ¶¶ 7-9. Named plaintiff Mohamed Ali was, until October 6, 2008, employed in the full time position of respiratory therapist. HHC has designated the full time respiratory therapist position as FLSA-exempt. Hall Dec. at ¶ 11.

**FLSA Disputes Are Subject to the CBA Dispute Resolution Procedures**

Article XV of the CBA, entitled "Adjustment of Disputes," sets forth compulsory internal dispute resolution procedures for Defendants' employees to follow regarding issues arising from their employment. Specifically, Section 10 of Article XV, entitled "FLSA Dispute Procedure," states, in relevant part, the following:

---

[1] The Declaration of Mondo Hall is annexed as Exhibit "A" to the Declaration of Blanche Greenfield ("Greenfield Dec.") dated September 17, 2010 and submitted by defendants in support of the instant motion.

a.      Any dispute, controversy or claim concerning or arising out of the application or interpretation of the Fair Labor Standards Act ("FLSA Controversy") *shall* be submitted by a claimant in accordance with this section.[2]

b.      Any FLSA Controversy must be presented in writing and in the form prescribed by the FLSA Panel no later than sixty days after the date on which such FLSA Controversy arose

c.      i.      Any FLSA Controversy arising out of a claimed wrongful computation of benefits shall be submitted to the applicable agency head or designee for review and resolution.  A copy shall also be submitted to the Office of Labor Relations and to the Union.  The agency shall have thirty days to resolve the matter and issue a written decision; such period may be extended by mutual agreement of the parties.

        ii.     If the matter is not satisfactorily resolved at the agency level, the claimant may, within two weeks after receipt of the agency determination, appeal the matter to the FLSA Panel in writing.

d.      The FLSA Panel shall consist of a representative designated by the Municipal Labor Committee and a representative designated by the Commissioner of the Office of Labor Relations of the City of New York.  The FLSA Panel shall establish appropriate forms and procedures to promptly review and resolve all FLSA Controversies submitted to it.

e.      Any FLSA Controversy arising out of the classification of a position or group positions as exempt or non-exempt from the FLSA shall be submitted by an employee in writing to the FLSA Panel.

        A Copy of any FLSA Controversy concerning a HHC title which is submitted to the FLSA Panel pursuant to this Section 10(e) shall be forwarded immediately by the Panel to the HHC's Office of Vice President for Human Resources.  If the Panel deems it necessary to the proper resolution of said FLSA Controversy, it shall consult with HHC prior to issuance of its determination.

                        *       *       *       *       *

---

[2]    Significantly, the dispute resolution procedure in the CBA, which addresses FLSA disputes, is to be  initiated by individual "claimants," and need not be endorsed or commenced by the Union.  Further, the FLSA dispute resolution mechanism does not require that the aggrieved claimant pay fees to an arbitrator or any mediator.

f.    Notwithstanding the provisions of this Section 10, the submission of a dispute by an employee under this procedure shall not constitute a waiver of the employee's rights under the FLSA.[3]

## POINT I

### THE NAMED PLAINTIFFS LACK STANDING WITH RESPECT TO THE CLAIMS ASSERTED IN THE AMENDED COMPLAINT.

"The party invoking federal jurisdiction bears the burden of establishing the elements of standing." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "Because 'standing is not dispensed in gross,' Lewis v. Casey, 518 U.S. 343, 358 n. 6, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), each of the named plaintiffs must establish the necessary elements with respect to each claim he asserts on his own behalf or on behalf of others." Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329-30 (2d Cir. 1997); Mental Disability Law Clinic v. Hogan, 2008 U.S. Dist. LEXIS 70684, * 21 (E.D.N.Y. Aug. 29, 2008). In order for named plaintiffs' Jonathan Yarus and Mohamed Ali to establish standing to sue, each must establish, 1) an injury in fact, 2) a causal connection between the injury and defendants' actions, and 3) a likelihood that the injury will be redressed by a favorable decision. See e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Moreover, in order to represent a class, each named plaintiff must personally have standing to litigate his own claim. Jobie O. v. Spitzer, 2007 U.S. Dist. LEXIS 91460, at *10 (S.D.N.Y. Dec. 5, 2007)

The Amended Complaint in this action is brought by named plaintiffs Jonathan Yarus and Mohamed Ali "on behalf of themselves and all employees similarly situated." Amd. Cmplt.

---

[3]    A true and correct copy of Article XV, Section 10 of Plaintiffs' CBA is attached to the Greenfield Dec. at Exhibit "B." Courts may take judicial notice of CBAs integral to the terms and conditions of plaintiffs' employment in the context of Rule 12(b)(6) motions to dismiss. See Tyler v. City of New York,), 2006 U.S. Dist. LEXIS 29650 (E.D.N.Y. May 16, 2006).

at caption.  The Amended Complaint asserts eleven causes of action, including federal claims brought pursuant to RICO and  FLSA.  The Amended Complaint also asserts claims under the New York Labor Law and common law tort claims. All of plaintiffs federal and state law claims arise out of the allegation that defendants failed to "pay[] nonexempt employees for all hour worked and/or overtime for hour worked over forty per week."  See Amd. Cmplt. ¶11.  The named Plaintiffs seek to maintain a class action with respect to their causes of action asserted under RICO and New York State Law consisting of "current and former employees who worked for defendants, **were paid hourly** and were not paid for all the time they worked including applicable premium pay." Amd. Cmplt. at ¶ 10 (emphasis added).  With respect to their FLSA claim, the Amended Complaint avers that "Plaintiffs and Class Members were not classified as exempt employees because hourly employees do not fall under one of the enumerated exemptions under the FLSA." Amd. Cmplt. at ¶ 122.

However, contrary to the allegations of the Amended Complaint, defendants have demonstrated[4] that named plaintiffs Jonathan Yarus and Mohamed Ali, were not hourly employees. See Hall Dec. at ¶¶ 5-11.  In fact, Plaintiffs Yarus and Ali both served in salaried positions designated by the HHC as FLSA-exempt. Id.  As such, plaintiffs Yarus and Ali cannot establish that they have suffered in injury in fact arising out of defendants alleged failure to properly compensate hourly employees for work alleged to have been performed during their

---

[4] While in considering a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court must generally accept as true the factual allegations of the complaint, Zinermon v. Burch, 494 U.S. 113, 118  (1990) a "court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." Antares Aircraft, L.P. v. Fed. Republic of Nigeria, 948 F.2d 90, 96 (2d Cir. 1991), vacated for reconsideration on other grounds, 505 U.S. 1215, 112 S. Ct. 3020 (1992), reaff'd on remand, 999 F.2d 33 (2d Cir. 1993); Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).

meal break.   Accordingly,   they lack standing to pursue all claims asserted in the Amended Complaint on their own behalves and on behalf of all HHC hourly employees.

**POINT II**

**THE CLEAR, UNMISTAKABLE, AND MANDATORY DISPUTE RESOLUTION PROCEDURE CONTAINED IN THE CBA REQUIRES DISMISSAL OF PLAINTIFFS' FLSA CLAIMS AS A MATTER OF LAW**

A.    **Federal Law Strongly Favors The Arbitration Of Disputes**

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 et seq., courts are required to "'rigorously enforce agreements to arbitrate.'"   Shearson/American Express v. McMahon, 482 U.S. 220, 226 (1987), quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985); see also Pomposi v. Gamestop, No. 3:09-cv-340 (VLB), 2010 U.S. Dist. LEXIS 1819 (D. Conn. Jan. 11, 2010) ("in light of the 'liberal federal policy favoring arbitration agreements,' courts [compel the] arbitration of wage payment claims"); Martin v. Sci Management, 296 F. Supp. 2d 462, 467 (S.D.N.Y. 2003) ("The [FAA] requires ... courts to enforce arbitration agreements reflecting Congress's recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation") (internal citation omitted).   The FAA explicitly requires that federal courts stay judicial proceedings if the issues involved in such proceedings are subject to arbitration, and directs the district courts to require parties to an arbitration agreement to resolve disputes in accordance with that agreement.[5]  See, e.g., Dean Witter Reynolds, Inc., 470 U.S. at

---

[5]      9 U.S.C. § 3 states, "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." Id. (emphasis added.)

- 7 -

218; see also Perry v. N.Y. Law Sch., No. 03 Civ. 9221 (GBD), 2004 U.S. Dist. LEXIS 14516, at *14 (S.D.N.Y. July 27, 2004).

Fourteen Penn Plaza LLC v. Pyett (*supra*) also provides compelling support for policy arguments in favor of arbitration. Recognizing that earlier cases "rested on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants," the Court noted that "arbitral tribunals are readily capable of handling the factual and legal complexities of ... claims" and "the simplicity, informality, and expedition of arbitration" operate as valid incentives for the selection of arbitration over litigation. Pyett, 129 S. Ct. 1456, 1470-71. Ultimately, "objections centered on the nature of arbitration do not offer a credible basis for discrediting the choice of that forum to resolve statutory ... claims." Id. at 1471.

**B.     The Pyett Decision And Its Progeny Require Dismissal of Plaintiffs' FLSA Claims In Favor of Contractual Dispute Resolution.**

In a seminal decision issued in 2009, the Supreme Court *explicitly* held that arbitration provisions contained in collective bargaining agreements, which clearly and unmistakably require union members to arbitrate specific statutory claims, are enforceable as a matter of law. See Pyett, 129 S. Ct. 1456, 1458. That decision constitutes a marked reversal of prior law and is dispositive in this case.

In Pyett, the Court was presented with a collective bargaining agreement with grievance and arbitration provisions which stated that claims under anti-discrimination laws, including, specifically, the Age Discrimination in Employment Act ("ADEA"), "*shall* be subject to the grievance and arbitration procedures as the sole and exclusive remedy for violations." Id. at 1461 (emphasis added). The individual union members, through their union, filed grievances alleging, among other things, that Penn Plaza violated the CBA's ban on workplace

- 8 -

discrimination by reassigning them on the basis of their age. Id. at 1458. However, after the grievance process was initiated, the union members withdrew their age discrimination claims from the arbitration process and filed a complaint with the Equal Employment Opportunity Commission ("EEOC"); thereafter, they filed suit against Penn Plaza in the Southern District of New York. Id. at 1462. Penn Plaza's motion to compel arbitration of the individuals' age discrimination claims was denied by both the Southern District and the Second Circuit, which held that even where a union's waiver of individual rights to bring statutory claims in a judicial forum was clear and unmistakable, such waiver of an individual's federal statutory claims was nonetheless unenforceable. See id. at 1462-63.

The Supreme Court disagreed with the reasoning of the Southern District and the Court of Appeals and reversed. The Court held that because the union and Penn Plaza had "collectively bargained in good faith and agreed that employment-related discriminations claims, including claims brought under the ADEA, would be resolved in arbitration," "the CBA's arbitration provision must be honored unless the ADEA itself removes this particular class of grievances from the NLRA's broad sweep." Id. at 1464-65. It concluded that the ADEA did not preclude the arbitration of claims brought under the statute. Id. at 1465, citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991) ("Nothing in the law suggests a distinction between the status of arbitration agreements signed by an individual employee and those agreed to by a union representative. This Court has required only that an agreement to arbitrate statutory antidiscrimination claims be 'explicitly stated' in the collective-bargaining agreement. The CBA under review here meets that obligation"). The Pyett Court also concluded that an explicit agreement to arbitrate federal claims was not a waiver of a substantive right under federal statutes, and that to the extent Alexander v. Gardner-Denver

- 9 -

Co., 415 U.S. 36, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974) and its progeny dictated otherwise, those decisions "rested on a misconceived view of arbitration that this Court has since abandoned." Id. at 1469. Further, the Court distinguished its holding in Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981), wherein the plaintiff was not barred from pursuing federal litigation following the unsuccessful arbitration of his FLSA claim, on the grounds that "the arbitration provision under review in Barrentine did not expressly reference the statutory claim at issue." Id. at 1468.

Courts have consistently applied Pyett to compel individuals to arbitrate their  federal statutory claims where their CBAs' provisions meet the standards set forth in Pyett.  See Beljakovic v. Melohn Props., No. 2:04-cv-03694-RJH-GWG, 2009 U.S. Dist. LEXIS 83600, at *1 (S.D.N.Y. May 11, 2009) (granting defendant's renewed motion to compel arbitration of plaintiff's ADEA claims in light of Pyett); Johnson v. Tishman Speyer Props., No. 09 Civ. 1959 (WHP), 2009 U.S. Dist. LEXIS 96464, at *9 (S.D.N.Y. Oct. 16, 2009) (compelling arbitration of Title VII claims pursuant to Pyett); Borrero v. Ruppert Hous. Co., No. 08 CV 5869 (HB), 2009 U.S. Dist. LEXIS 52174, at *7-8 (S.D.N.Y. June 19, 2009) (dismissing Title VII claims as arbitrable pursuant to Pyett).

Pyett dictates that the instant action be dismissed by virtue of the contractual dispute resolution procedure to which Plaintiffs' FLSA claims are subject; first, the CBA specifically sets forth a clear and unmistakable mechanism for the resolution of FLSA claims, and second, as discussed below, the FLSA does not, by its terms, preclude such resolution of individual claims.

**A.     The Pyett Decision And Its Progeny Require Dismissal of Plaintiffs' Claims In Favor of Contractual Dispute Resolution.**

The CBAs FLSA Dispute Procedure unequivocally states that "[a]ny dispute, controversy or claim concerning or arising out of the application or interpretation of the Fair Labor Standards

Act ... *shall be submitted by a claimant in accordance with this section*." (Greenfield Dec. Exh. B at 1.) The plain meaning of the word "shall" indicates that use of the FLSA Dispute Procedure is not merely an option with respect to the resolution of any claims concerning or arising from the FLSA – it is a requirement or an obligation.[6]

Pursuant to Pyett, however, an arbitration clause as contained in a CBA does not *have* to be an exclusive remedy in order to constitute a clear and unmistakable waiver. Indeed, the Southern District has repeatedly interpreted Pyett to stand for the proposition that a CBA's arbitration provision is enforceable *unless* an employee is prevented from arbitrating his or her claims by the union – accordingly, the filing of an arbitration claim pursuant to the CBA must constitute an initial step, but should the arbitration of federal statutory rights be precluded by the union, the employee's claims may be filed in federal court notwithstanding his or her CBA. See Pyett, 129 S. Ct. at 1469 ("The decision to resolve ADEA claims by way of arbitration instead of litigation ... waives only the right to seek relief from a court *in the first instance*") (emphasis added); Kravar v. Triangle Services, Inc., 1:06-cv-07858-RJH, 2009 U.S. Dist. LEXIS 42944, *6-8 (S.D.N.Y. May 19, 2009) (finding that Pyett created an exception to the enforceability of a union-negotiated arbitration agreement where the arbitration provision in fact operated as a substantive waiver of federal rights, whereby the union exercised its power to block the arbitration of plaintiff's claims); Borrero, 2009 U.S. Dist. LEXIS 52174, *9-10 (dismissing plaintiff's Title VII claims pursuant to Pyett, but doing so without prejudice "because if [plaintiff] is prevented by the Union from arbitrating his claims, the CBA's arbitration provision will not be enforceable"). In each of the aforementioned cases, arbitration is not the individual's

---

[6]   The Merriam-Webster Dictionary states that "shall" is "used in laws, regulations, or directives to express what is mandatory." See http://www.merriam-webster.com/dictionary/shall.

*exclusive* remedy – it is merely a required *initial* step, and should it fail, the aggrieved employee may then pursue his claim in court. Significantly, in <u>Kravar</u>, the plaintiff had *already* attempted to arbitrate her national origin, disability, and retaliation claims, but because she was blocked from doing so by her union, the court declined to dismiss her federal lawsuit; in <u>Borrero</u>, the fact that plaintiff had *yet* to attempt to arbitrate his claims merited dismissal. See <u>Kravar</u>, 2009 U.S. Dist. LEXIS 42944 at *8; <u>Borrero</u>, 2009 U.S. Dist. LEXIS 52174 at *9-10.

**B.    The FLSA Does Not Preclude the Resolution of Individual Claims Via the Dispute Procedure in Plaintiffs' CBA.**

Significantly, nothing in the text of the FLSA (or the FAA) indicates a Congressional intent to preclude the compulsory dispute resolution of FLSA claims. To the contrary, courts have regularly directed claimants to resolve FLSA claims at arbitration. See, e.g., <u>Coheleach v. Bear, Stearns & Co.</u>, 440 F. Supp. 2d 338, 340 (S.D.N.Y. 2006) ("[P]laintiff's FLSA claim is . . . subject to NASD arbitration"); <u>Tyler</u>, 2006 U.S. Dist. LEXIS 29650 (compelling non-binding arbitration of FLSA claims under identical CBA provision at issue here); <u>Perry v. N.Y. Law Sch.</u>, No. 03 Civ. 9221 (GBD), 2004 U.S. Dist. LEXIS 14516, at *8 (S.D.N.Y. July 27, 2004) ("FLSA claims are . . . arbitrable"); <u>Sinnett v. Friendly Ice Cream Corp.</u>, 319 F. Supp. 2d 439, 444 (S.D.N.Y. 2004) (agreement to arbitrate FLSA claims held enforceable); <u>Figueroa v. Dist. of Columbia Metropolitan Police Dep't</u>, 07-01992 (HHK)(AK), 2009 U.S. Dist. LEXIS 90147 (D.D.C. Sept. 30, 2009) (recognizing that arbitration clauses in CBAs apply to FLSA claims where the "provision expressly covers statutory rights"); <u>Bailey v. Ameriquest Mortgage Co.</u>, 346 F.3d 821, 822-23 (8th Cir. 2003) (compelling mandatory arbitration of FLSA claims); <u>Adkins v. Labor Ready, Inc.</u>, 303 F.3d 496, 506-507 (8th Cir. 2002) (same). There is no "inherent conflict between arbitration and the policies underlying the FLSA." <u>Ciago v.</u>

Ameriquest Mortgage Co., 295 F. Supp. 2d 324, 329 (S.D.N.Y. 2003) (internal citations omitted).

Accordingly, this court should dismiss plaintiffs' FLSA claims and Compel Dispute Resolution in accordance with the terms of the "FLSA Dispute Procedure" in their Collective Bargaining Agreement.

## POINT III

**EVEN IF THE NAMED PLAINTIFFS HAVE STANDING TO PURSUE THE RICO CLAIMS ASSERTED IN THE AMENDED COMPLAINT, THE ALLEGATIONS OF THE AMENDED COMPLAINT FAIL TO STATE A CAUSE OF ACTION UNDER THAT STATUTORY PROVISION.**

RICO claims are closely scrutinized by the courts. See e.g. Nasik Breeding & Research Farm Ltd. v. Merck & Co., 165 F. Supp. 2d 514, 537 (S.D.N.Y. 2001) (dismissing plaintiff's RICO mail and wire fraud claims for inadequacy); Manhattan Telecomms. Corp. v. DialAmerica Mktg., 156 F. Supp. 2d 376, 381 (S.D.N.Y. 2001) (dismissing plaintiffs' RICO complaint for failure to show a pattern of racketeering). Courts "must be mindful of the devastating effect such claims may have on defendants." Id. Because the "mere assertion of a RICO claim... has an almost inevitable stigmatizing effect on those named as defendants... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (quoting Figueroa Ruiz v. Alegria, 896 F.2d 645, 650 (1st Cir. 1990)). Further, courts evaluating RICO claims must attempt to be "consistent with Congress's goal of protecting legitimate businesses from infiltration by organized crime." See United States v. Porcelli, 865 F.2d 1352, 1362 (2d Cir.1989); United States Fire Ins. Co. v. United Limousine Serv., 303 F. Supp. 2d 432, 442 (S.D.N.Y. 2004). "Courts must always be on the lookout for the putative RICO case that is really "nothing more

than an ordinary fraud case clothed in the Emperor's trendy garb'" Schmidt v. Fleet Bank, 16 F.Supp.2d 340, 346 (S.D.N.Y. 1998) quoting In Re Integrated Resources Real Estate, 850 F. Supp. 1105, 1148 (S.D.N.Y. 1994).

Moreover, the U.S. Supreme Court has recently emphasized that courts deciding a Rule 12(b)(6) motion must dismiss "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements…" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. In order for a pleading to have "nudged [its] claims across the line from conceivable to plausible," mere conclusory allegations will not suffice; the allegations must be supported by some set of facts that amount to more than "labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561 (2007).

Federal Rule of Civil Procedure 9(b) requires that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with *particularity*." Fed. R. Civ. P. 9(b) (emphasis added); see also McLaughlin v. Anderson, 962 F.2d 187, 191 (2d Cir. 1992); Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986); Denny v. Barber, 576 F.2d 465, 469 (2d Cir. 1978). To satisfy this requirement, the complaint "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989). Plaintiffs must also "identify the purpose of the mailing within the defendant's fraudulent scheme." Id. Further, plaintiffs must "state the manner in which the allegedly fraudulent statement misled them, and what the defendants obtained as a consequence of the fraud."

<u>Lorentzen v. Curtis</u>, 18 F. Supp. 2d 322, 330 (S.D.N.Y. 1998) (quoting <u>Conan Properties, Inc. v. Mattel, Inc.</u>, 619 F. Supp. 1167 (S.D.N.Y. 1985)).

The reasoning for such a standard is that "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." <u>Gross v. Waywell</u>, 628 F. Supp. 2d 475, 493 (S.D.N.Y. 2009) (quoting <u>Efron v. Embassy Suites (Puerto Rico), Inc.</u>, 223 F.3d 12, 20 (1st Cir. 2000)). Therefore, "mere conclusory allegation[s] to the effect that defendant's conduct was fraudulent" have been found insufficient. <u>Segal v. Gordon</u>, 467 F.2d 602, 607 (2 Cir. 1972) (quoting <u>Shemtob v. Shearson, Hammill & Co.</u>, 448 F.2d 442, 444 (2 Cir. 1971)); <u>see also</u> <u>Browning Ave. Realty Corp. v. Rosenshein</u>, 774 F. Supp. 129, 137 (S.D.N.Y. 1991) ("Conclusory allegations that… conduct was fraudulent and deceptive are insufficient to satisfy particularity requirement of Fed. R. Civ. P. 9(b).").

Plaintiffs must "allege a factual predicate that is concrete enough to warrant further proceedings." <u>McKinnon v. Hermes of Paris, Inc.</u>, 2007 U.S. Dist. LEXIS 26995 (S.D.N.Y. 2007). Here, with respect to the alleged fraud, plaintiffs allege as follows:

> The payroll checks were false and deceptive because they misled Plaintiffs and Class Members about the amount of wages to which they were entitled, the number of hours which they had worked, and whether defendants had included all compensable work time, as well as Plaintiffs' and Class Members' status and rights under the FLSA. Plaintiffs and Class Members relied to their detriment on the misleading payroll checks that defendants mailed and those misleading documents were a proximate cause of Plaintiffs' and Class Members injuries.

Amd. Cmplt at ¶ 100.

In contrast to the particularity with which a fraud claim must be pled, the amended complaint does not contain any facts regarding the information that was actually contained in the paychecks that allegedly "misled Plaintiffs . . . about the amount of wages to which they were entitled." Indeed, the amended complaint does not assert a single factual allegation describing the information that was included in the paychecks, let alone information that "misled" plaintiffs. Thus, the amended complaint does not indicate whether the paychecks contained any information regarding the number of hours plaintiffs were being compensated for during that pay period, and/or that the paychecks purported to reflect hours worked. As such, the Amended Complaint is a bare, conclusory recital that is insufficient to support the conclusion that the paychecks were fraudulent.

A.   **Plaintiffs' Allegation that Defendants Misrepresented the Law Does Not Constitute Actionable Fraud.**

Plaintiffs allege that Defendants formed a scheme to defraud them by misrepresenting the law and furthered that scheme by mailing Plaintiffs their paychecks. Specifically, Plaintiffs claim that "when questioned, the defendants falsely assured Plaintiffs and Class Members that the defendants understood federal and state labor laws and that based on that knowledge, the defendants were ensuring that they were properly paying the Plaintiffs and Class Members."[7] Amd. Cmplt. at ¶ 117. These allegations fail to state a claim of mail fraud because an employer's alleged misrepresentation of the law to his employee does not constitute actionable fraud. A claim for fraud under New York law must allege a false representation of *material fact* made by defendant with intent to deceive, as well as damage to plaintiff due to reliance, supported by clear and convincing evidence; courts often dismiss fraud claims for failure to

---

[7] As discussed in point I supra, because plaintiffs Yarus and Ali were in fact FLSA-exempt employees and not hourly employees, the factual predicate underlying the plaintiffs' RICO claims also falls.

- 16 -

present sufficient evidence of false representations.  See Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966 (2d Cir. 1987); Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 599 (2d Cir. 1991); Filler v. Hanvit Bank, 156 Fed. Appx. 413, 416 (2d Cir. 2005).

Clearly, Plaintiffs' RICO claim is predicated upon defendants' alleged misrepresentation of the law, not material fact.  The disputed question turns upon whether hourly employees were paid for all "compensable" time pursuant to the Fair Labor Standards Act.  Thus plaintiffs' allege:

> When questioned by the employees about the Meal and Break Deduction Policy, the defendants affirmatively stated that the employees were being fully paid for the work time for which they were entitled to be paid, even though defendants knew compensable work time was being excluded from the employees' pay (emphasis added).  Amd. Complt. at ¶ 71.

> Further, by maintaining and propagating the illegal Unpaid Work Policies, defendants deliberately misrepresented to Plaintiffs and Class Members that they were being properly paid for all compensable time, even though Plaintiffs and Class Members were not receiving pay for all time worked including applicable premium pay (emphasis added). Amd. Complt. at ¶ 90.

> The Plaintiffs and Class Members are not experts in proper payment under labor laws, and more specifically are not aware of what time is compensable for interrupted and missed meal breaks, nor how the defendants' internal computer systems were determining the amount they were being paid (emphasis added) Amd. Complt. at ¶ 116.

The issue of what comprises compensable time is a matter of law, not fact, and therefore plaintiffs fail to allege that there was a false representation of material fact, as required for a fraud claim in New York to survive a motion to dismiss.

- 17 -

**B.**     **Plaintiffs Allegations Regarding the Mailing of Employee Paychecks Are Not Sufficient To Sustain Their RICO Claim**

To sustain a RICO claim, Plaintiffs must allege that the mail was used "for the purpose" of carrying out the fraudulent scheme.  18 U.S.C. § 1341.  While there is no requirement that the defendant personally mail a letter, the plaintiff must show "1) that the defendant 'caused' the mailing...and 2) that the mailing was for the purpose of executing the scheme or...'incidental to an essential part of the scheme.'" United States v. Bortnovsky, 879 F.2d 30, 36 (2d Cir. 1989) (quoting Pereira v. United States, 347 U.S. 1, 8-9, 98 L. Ed. 435, 74 S. Ct. 358 (1954)). Here, the Amended Complaint alleges that defendants, by mailing out paychecks reflecting allegedly insufficient wages and that contained alleged misleading information about the amount of compensable time worked, committed mail fraud. Specifically, the Amended Complaint avers: "In executing or attempting to execute the Scheme and to receive the financial benefit of the Scheme, defendants repeatedly mailed payroll checks, either directly to Plaintiffs and Class Members or between defendants' business locations.  These mailings occurred on a regular basis and more than 100 such mailings occurred in the last ten years.  Amd. Cmplt. at ¶ 99.  The Amended Complaint further avers:

> The payroll checks were false and   deceptive because they misled Plaintiffs and Class Members about the amount of wages to which they were entitled, the number of hours which they worked, and whether defendants had included all compensable work tine, as well as Plaintiffs' and Class Members status and rights under the FLSA. Plaintiffs and Class Members relied to their detriment on the misleading payroll checks that defendants mailed and those misleading documents were a proximate cause of Plaintiffs' and Class Members' injuries.

Amd. Cmplt. at ¶ 100.

- 18 -

Recently, in <u>Barrus v. Dick's Sporting Goods, Inc.</u>, 2010 U.S. Dist. LEXIS 79014 *41-45 (W.D.N.Y. Aug. 5, 2010), the court reviewed allegations nearly identical to those asserted herein. In <u>Barrus</u>, the plaintiffs' RICO claim was based on their allegation that defendants "[i]n executing or attempting to execute the Scheme and to receive the financial benefits of the Scheme, defendants repeatedly mailed payroll checks, either directly to Plaintiffs and Class Members or between defendants' business locations. These mailings occurred on a regular basis and more than 100 such mailings occurred in the last 10 years." Id. at *43. The plaintiffs further alleged that "[t]he payroll checks were false and deceptive because they misled Plaintiffs and Class Members about the amount of wages to which they were entitled, as well as their status and rights under the FLSA. Plaintiffs and Class Members relied to their detriment on the misleading payroll checks that defendants mailed and those misleading documents were a proximate cause of Plaintiffs' and Class Members' injuries. Id. at *44. The Court found that the allegations of mail fraud as pled did not comply with Federal Rule of Civil Procedure 9. Accordingly, the Court dismissed the RICO claim. Plaintiffs' RICO claims should, for the same reason, be dismissed herein.

## C.    Plaintiffs Fail to State a Claim Under § 1962(c)

Title 18 U.S.C. § 1962(c) states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The Supreme Court has held that a proper § 1962(c) claim must allege the "existence of two distinct entities: (i) a 'person'; and (ii) an 'enterprise' that is not simply the same 'person' referred to by a different name." <u>Cedric Kushner Promotions, Ltd. V. King</u>, 533 U.S. 158, 161

- 19 -

(2001). An entity may not be simultaneously the "person" and the "enterprise" who conducts the affairs of the enterprise through a pattern of racketeering activity. See Bennett v. United States, 770 F.2d 308, 315 (2d. Cir. 1985). Moreover, the Second Circuit has held that "a plaintiff may not circumvent this distinctness requirement by alleging an association-in-fact enterprise that merely consists of a corporation associated with its employees, where the corporation is also the RICO defendant." Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994). The Second Circuit explained that the separation of the person and enterprise is consistent with both the policy and language of the statute because:

> requiring a complaint to distinguish between the enterprise and the person conducting the affairs of the enterprise in the prohibited manner is supported by the plain language of section 1962(c), which clearly envisions two entities. Such a distinction focuses on the culpable party and recognizes that the enterprise itself is often a passive instrument or victim of the racketeering activity.

Bennett v. United States Trust Co., 770 F.2d 308 (2d Cir. 1985). The Courts have rejected attempts to blur the distinction between person and enterprise. See e.g. Rush v. Oppenheimer & Co., 628 F. Supp. 1188, 1194 (S.D.N.Y. 1985) (finding that plaintiff's attempted distinction between person and enterprise, which were essentially the same group of entities, was inadequate); Ames Assocs. v. ABS Partners Real Estate LLC, 2007 U.S. Dist. LEXIS 24147 (S.D.N.Y. 2007) (finding that the same entities could not be held liable under RICO as both person and enterprise); Parnes v. Heinold Commodities, Inc., 548 F. Supp. 20, 23-24 (N.D. Ill. 1982) ("It would be an obvious distortion to permit suit against the 'enterprise' that had itself been infiltrated by the 'unlawful' conduct or participation of the 'person' -- the 'enterprise' that may itself have been a victim of the racketeering activity."). Moreover, the distinction between person and enterprise "would be rendered meaningless if plaintiffs were permitted to name an

employee as the RICO person and the corporation as the RICO enterprise, and then to hold the corporation responsible for the employee on a theory of respondeat superior." <u>C.A. Westel de Venez. v. American Tel. & Tel. Co.</u>, 1994 U.S. Dist. LEXIS 14481 (S.D.N.Y. 1994).

Here, Plaintiffs allege that the same group of defendants who constitute the "persons" under the RICO claim are precisely the same defendants who make up the "enterprise." Amd. Cmplt. at ¶¶ 35, 107, and 108. This entirely circumvents the necessary distinction between person and enterprise under RICO, the importance of which the Court has repeatedly emphasized. Thus, Plaintiffs' RICO claim must fail.

**D.     The FLSA Precludes Plaintiffs' RICO Claim**

The FLSA precludes Plaintiffs' RICO claim because it already "provides a sufficiently punitive scheme to address the Defendants' [alleged] misconduct in this case." <u>See Choimbol v. Fairfield Resorts, Inc.</u>, 2006 WL 263 791, *6-*7, (E.D. Va. Sept. 11, 2006) (holding that plaintiffs' RICO claims seeking overtime pay were precluded by the FLSA because it, among other federal statutes, already provided similar comprehensive remedies). Specifically, the FLSA provides:

> "an usually elaborate enforcement scheme... [including] a private right of action permitting employees to sue in federal or state court to recover unpaid minimum wage and overtime compensation... and to bring actions for compensatory and injunctive relief for violations of the Act's minimum wage and overtime provisions."

<u>Kendall v. City of Chesapeake, V.A.</u>, 174 F.3d 437, 443 (4th Cir. 1999) (addressing claims alleged under 42 U.S.C. § 1983). In the FLSA, "Congress manifested a desire to exclusively define the private remedies available to redress violations of the statute's terms." <u>Id</u>.

Here, Plaintiffs' RICO claims are virtually identical to their FLSA claims in that they make the same allegations that defendants willfully and knowingly failed to pay the employees

- 21 -

all compensable wages under the FLSA.   Because Plaintiffs' RICO claims are essentially duplicative of the  FLSA and can be amply addressed by the FLSA, the RICO claim must be dismissed.

## POINT IV

### LABOR LAW §§ 190(8) AND 191 ET SEQ., DO NOT APPLY TO HHC, A PUBLIC BENEFIT CORPORATION.

The Third Cause of Action asserted in the Amended  Complaint is for defendants' alleged violations of the New York State Labor Law (N.Y. Labor Law").  However, New York Labor Law §190(3) specifically provides that "[t]he term 'employer' shall not include a governmental agency."  HHC is a public benefit corporation established under the laws of New York .  See Unconsolidated Law § 7381 et seq.,  The New York State legislature declared that the 'exercise by [HHC] of the functions, powers and duties" as set forth in HHC's enabling act "constitutes the performance of an essential public and governmental function."  Id.  HHC employees are, by statute, defined as "public employees." See Unconsolidated Law  § 7309(5).  HHC is not covered by the National Labor Relations Act because it has been deemed a political subdivision of the State of New York and therefore a public employer.   See 29 U.S.C. § 152(2) (expressly exempting political subdivisions from coverage); Szucs v. Committee of Interns and Residents, 2001 U.S. Dist. LEXIS 1113*10-12 (S.D.N.Y. Feb. 2001) (finding that HHC is a public employer and the NLRA expressly excludes public employers from coverage); Muhlrad  v. Mitchell, 1997 U.S. Dist. LEXIS 4683 *9-11 (S.D.N.Y. April 14, 1997) (dismissing HHC from a NLRA duty of fair representation lawsuit because HHC is a political subdivision of the State of New York). Moreover, HHC is subject to the New York City Collective Bargaining Law which only applies to public sector New York City employers.  N.Y. Admin. Code  § 12-303(g)

(defining HHC as a "public employer.")  Accordingly, plaintiffs' Labor Law claims do not apply to HHC and must be dismissed.

## POINT V

## PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED FOR FAILURE TO FILE A NOTICE OF CLAIM.

New York Unconsolidated Law § 7401(2), and New York General Municipal Law § 50-e,[8] establish conditions precedent to the commencement of certain actions against the New York City Health and Hospitals Corporation.  Specifically, a plaintiff seeking to maintain a cause of action against defendant HHC for damages for injuries to real or personal property, or for the destruction thereof, or for personal injuries or death must file a notice of claim within 90 days of the claims accrual.  See N.Y. Unconsol. L. § 7401(2); N.Y. Gen. Mun. L. § 50-e(a); McGriff v. New York City Health & Hosps. Corp., 38 A.D.3d 504, 504-505 (2d Dep't 2007).  Compliance with the notice of claim requirement is a condition precedent that must both be pleaded and proved before an action may be commenced against a municipal corporation.  See Davidson v. Bronx Municipal Hospital, 64 N.Y.2d 59, 62 (1984); Barchet v. New York City Transit Authority, 20 N.Y.2d 1, 6 (1967); Nicholas v. New York, 130 A.D.2d 470, 471 (2d Dep't 1987).  Notice of claim requirements are construed strictly by New York state courts, see Murray v. LeRoy Central School District, 67 N.Y.2d 775, 775 (1986), and failure to comply with the requirements ordinarily requires a dismissal for failure to state a cause of action, see Davidson, 64 N.Y.2d at 62.

---

[8] Because defendant HHC is a "public corporation," both N.Y. Unconsolidated Law § 7401(2) and N.Y. General Municipal Law § 50-e, apply to actions brought against the corporation.  See Viruet v. City of New York, 695 N.Y.S.2d 663, 665 n.3 (N.Y. Sup. Ct. 1999), aff'd, 277 A.D.2d 33 (1st Dep't 2000).

Here, plaintiffs have asserted causes of action under common law for unjust enrichment (eighth cause of action), fraud (ninth cause of action), negligent representation (tenth cause of action) and conversion (eleventh cause of action). Each of these causes of action are based on tort and therefore the filing of a notice of claim was required[9]. Prand v. County of Suffolk, 2008 N.Y. Misc. LEXIS 89666 * * 3-7 (Sup.Ct. Suffolk Cty., March 12, 2008) ( notice of claim required for causes action based on mistake, fraud, negligent misrepresentation, and equitable rescission). Here, because the Amended Complaint does not plead that plaintiffs' filed a notice of claim in this action, their state law claims must be dismissed.

---

[9] In addition, all of plaintiffs common law contract claims must be dismissed for failure to exhaust contractual remedies. HHC employees are unionized and the terms and conditions of their employment are governed by a collective bargaining agreement. See Greenfield Dec. Exhibit "B." Pursuant to the Article XV of the CBA plaintiffs' breach of contract claims and other common law claims are subject to the grievance and arbitration provisions of the agreement.

- 24 -

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss the Amended Complaint, in its entirety and for such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            September 17, 2010

                    MICHAEL A. CARDOZO
                    Corporation Counsel of the City of New York
                    Attorney for Defendants
                    100 Church Street, Room 2-142
                    New York, New York  10007
                    (212) 788-0872
                    bgreenfi@law.nyc.gov

By: _____
                    Blanche Greenfield
                    Assistant Corporation Counsel